HANDLY v. ADAMS. (No. 5862.)

(Court of Civil Appeals of Texas. San Antonio. May 23, 1917.)

1. BILLS AND NOTES ⬤⟿103(1), 106—VALIDITY —BONUSES TO RAILROADS.

Plaintiff loaned defendant's intestate $1,000, taking his note therefor, and intestate thereupon gave the money voluntarily to a railroad company in which plaintiff was financially interested and which was securing bonuses and donations from owners of land contiguous to the prospected route of its road. From the money received from defendant's intestate the railroad company paid plaintiff a debt of $52.80. *Held*, that there was nothing illegal in the transaction; the fact that plaintiff was financially interested in the railroad not rendering the transaction fraudulent and voidable.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 219, 225–238.]

2. BILLS AND NOTES ⬤⟿527(2)—PAYMENT— SUFFICIENCY OF EVIDENCE.

A finding that shares of stock in a railway company had not been issued to plaintiff in payment of the note was supported by evidence showing that the only stock ever issued to plaintiff was to secure a different note, and that he never owned such stock, though it was issued in his name.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1848, 1849.]

3. BILLS AND NOTES ⬤⟿519—ACTIONS—SUFFICIENCY OF EVIDENCE.

Evidence *held* to support a finding that defendant's intestate was not induced to execute such note by a promise of plaintiff or others interested in the railway company that stock would be issued to indemnify him against its payment.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1802.]

4. BILLS AND NOTES ⬤⟿494, 520—VALIDITY— PRESUMPTIONS—SUFFICIENCY OF EVIDENCE.

Good faith on the part of plaintiff in his dealings with defendant's intestate would be presumed in the absence of proof to the contrary, and where the evidence showed that plaintiff, defendant's intestate, and others were all interested in having the railroad built, bad faith was not shown, though the enterprise failed.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1813, 1832, 1836. 1837.]

5. APPEAL AND ERROR ⬤⟿544(1)—REVIEW— NECESSITY OF BILL OF EXCEPTIONS.

Rulings upon special instructions cannot be reviewed, where the exceptions thereto are not supported by a formal bill of exceptions, as required by the statute in force at the time of the trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2412.]

Appeal from District Court, Bee County; James R. Dougherty, Special Judge.

Action by W. W. Adams against A. M. Handly, administrator of J. D. Love, deceased. From a judgment for plaintiff, defendant appeals. Affirmed.

L. D. Stroud, of Beeville, for appellant. J. C. Crisp and Beasley & Beasley, all of Beeville, for appellee.

SWEARINGEN, J. This is a suit by W. W. Adams, appellee, against the appellant, A. M. Handly, administrator of the estate of J. D. Love, to recover upon a promissory note and foreclose a deed of trust lien securing the payment of the note. Upon the verdict of a jury to special issues, judgment was rendered by the court in favor of appellee against appellant for the amount of the note, attorney's fees, costs, and for foreclosure of the lien.

Appellant admitted the cause of action pleaded by appellee, but in defense averred: (1) Payment; (2) failure of consideration; (3) fraud in procuring the note.

As the errors assigned relate chiefly to the defense of fraud, we omit further reference to defense of payment and failure of consideration.

The facts alleged to indicate fraud are substantially these: That appellee, together with associates, secured a charter for a railroad, projected from Beeville to Eagle Pass, and advertised that an abundance of capital was available for the construction of the railroad. By this scheme the conspirators intended to issue and sell to the innocent, covetous, and unwary great amounts of the capital stock of the railroad corporation and, in some way, not clearly alleged, absorb the purchase price paid for the stock; to secure large bonuses and donations from owners of lands contiguous to the prospected route of the road. Then, enriched by this fleece from the lambs, it was the intent, motive, and plan of the said high financiers to abandon the railroad and leave the fleeced with their worthless certificates, experience, and shattered hopes; never from beginning to end ever intending to construct the road, and knowing that there was no capital available and chance to build the promised road. Still another allegation of fraud is that Love was induced to execute the said note by a promise from appellee that, as an indemnity against loss by reason of the execution of the note, certificates of stock of the Nueces River Valley Railroad Company would be issued to Love. The facts are sufficiently stated in the discussion of the assignments.

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Under the first and second assignments, appellant contends that it was error of the court to render the judgment herein for the reason that the jury found, in answer to special issues, that J. D. Love signed and delivered to the appellee · the $1,000 note which is the basis of this suit; that appellee paid Love $1,000 on receipt of the note; that Love, on receipt of the $1,000, gave it to R. M. Buck, the secretary of the Nueces River Valley Railway Company; that R. M. Buck of the said railroad company paid appellee $52.80, which the railroad company had promised to pay him; and that appellee, W. A. and Lee Frisby, R. M. Buck, and others were engaged in a common enterprise of promoting the railway for their mutual benefit and profit at the time of the execution of the note by Love. The second proposition submitted under the first two assignments contends that the note was voidable because the officials paid the debt of $52.80 due by the railway company to appellee out of this $1,000 given by Love to the company to be used for the railroad enterprise.

The findings show that appellee loaned the $1,000 to Love; that Love promised to pay it back to him as per the terms of the note; that Love thereupon owned the $1,000 which he voluntarily gave to the railroad company, who thereupon became the owners of the $1,000; that out of their own money the railroad company paid its honest debt of $52.80 to appellee. No legal or moral exception can be taken to any of the aforementioned acts of any of the participants. The fact that appellee, not an officer, was financially interested in the railroad corporation, could not, of itself, taint any of these mentioned transactions and render them fraudulent and voidable.

The assignments are overruled.

[2] In the next assignment, it is insisted that there was no evidence to support the jury's answer, "No," to the eighth special issue, which is as follows:

"Did said Buck and said Frisbys, or the said Nueces River Valley Railway Company or any of them issue to said Adams shares of stock in said railway company in payment of the note sued on?"

The evidence shows that there was issued to appellee on the 4th day of October, 1910, certificate No. 2, for 298 shares of the capital stock of the Nueces River Valley Railroad Company; that this certificate was issued to him as security for the payment of a $1,000 note executed by Mrs. M. P. Boyd, joined by R. M. Buck, Lee Frisby, and W. A. Frisby. The Boyd note mentioned, like the Love note, was secured by real estate. While the certificate was issued in the name of appellee, he never owned it. No other certificate of stock of the said railroad company was ever issued to appellee. The evidence here recited is sufficient to sustain the finding of the jury in answer to the eighth special issue.

This assignment, numbered sixth in appellant's brief, is overruled.

[3] The seventh assignment asserts that the evidence is insufficient to support the jury's answer, "No," to the ninth special issue, which is as follows:

"Did said W. W. Adams, the plaintiff, either by himself or with said Frisbys and Buck, induce said Love to execute said note by promising to the said Love that they or either of them would procure the issuance of certificates of stock in said railway company sufficient to indemnify him against the payment of said note?"

The record reveals that R. M. Buck, witness for appellant, testified:

"J. D. Love was not promised anything for the execution of said note. He was interested in securing the railroad."

Appellee denied that he promised to procure the issuance of stock to Love to indemnify him against the payment of the note executed by Love. W. A. and Lee Frisby both testified that Love was promised certificates of stock of the railroad if he had to pay the said $1,000 note. From their testimony, no stock was to be issued until the note was paid by Love. Their testimony shows that Love was bound to pay the note. The note has never been paid, and there is no prayer for recovery of stock in the event of judgment requiring payment.

The fair inferences from the evidence are that Love promised to convey to the railroad company 25 acres of land as a bonus to help construct the road over his land; that he borrowed the money on the said 25 acres and advanced it to the railroad company; that his profits would flow from city subdivisions on his farm.

The evidence fully sustains the jury's answer to the ninth special issue. The seventh assignment is overruled. For the reasons above stated, the twelfth assignment is overruled.

[4] The eighth assignment is that the jury's finding that the appellee, in his dealings with Love in regard to the note, acted in good faith, is not supported by the evidence.

Good faith will be presumed, in the absence of proof to the contrary. There is no evidence of bad faith. On the contrary, there is positive evidence from the witnesses of appellant that appellee loaned the money in good faith to Love upon a bona fide promise from Love to repay it, all evidenced by Love's promissory note, afterwards recognized in a letter from Love to appellee. Adams, Reese, Love, Buck, and the Frisbys, all in good faith believed the railroad could be built, and seem to have devoted their time, skill, abstract business, law and general library, and real estate to an earnest effort to build it. No one reaped the alleged illegal profits from the enterprise. All lost. Why it failed does not appear. It certainly cannot be said that an honest effort to build a railroad is fraudulent. The fraud alleged, as stated at the outset, is that appellee, to-

gether with Buck, the Frisbys, and others, never intended to have the road built, but merely conspired to induce the public to believe they so intended, thereby inducing the innocent and the credulous to buy worthless stock and donate bonuses. The evidence fails to sustain such allegations, and the jury's verdict thereon is fully supported.

The eighth assignment is overruled for the reasons given, which also dispose of the ninth assignment, complaining of the insufficiency of the evidence to sustain the verdict in answer to the nineteenth special issue.

[5] Assignment numbered 13a cannot be reviewed by us, because no ruling of the trial court upon special instructions can be reviewed by an appellate court unless the exceptions to such ruling are supported by a formal bill of exceptions, as required by the statute in force at the time of the trial of this cause. Gulf, T. & W. Ry. Co. v. Dickey (Sup.) 187 S. W. 184.

The judgment is affirmed.